Matter of the Probate of the Contested Will of MARY JOHN-
SON, Deceased.

*(Surrogate's Court, New York County, Filed July, 1899.)*

WILL—EXECUTION OF—UNDUE INFLUENCE.

> The mere fact that testatrix was not considered a very devout or
> religious woman, that she sometimes indulged in profane and irreli-
> gious language, does not prove that large charitable and religious be-
> quests by her were made under any undue influence.

Rastus S. Ransom and Thomas E. Fitzgerald (David Mc-
Clure, Joseph H. Choate and William C. Roe, of counsel), for
contestants.

VARNUM, S.—This case was tried before Mr. Surrogate Ar-
nold, but no decision was rendered by him before his retirement
from office. Subsequently a motion was made, of which all per-
sons having any interests, had due notice, by which the matter
was brought before me, as Judge Arnold's successor, to com-
plete the trial as unfinished business pending before my pre-
decessor, in accordance with the practice suggested in the Mat-
ter of Lawrence, 27 Misc. Rep. 473. This motion was opposed
by the counsel for contestants, who insisted that the case should
be tried before me *de novo*. After hearing long and able argu-
ments of counsel, I held that I had full power to proceed with
the determination of the case, and allowed the contestants an
exception to my ruling. See Matter of Johnson, 27 Misc. Rep.
167. Inasmuch as this case was not tried before me, an es-
pecially careful examination of the testimony taken on the trial
(more than 1,175 typewritten pages) has been necessary. The
testatrix, Mary Johnson, died March 10, 1897, being then about
fifty-six years old, leaving an estate estimated at about $50,000
of personalty and $500,000 of realty. She was a woman of fair

intelligence, but of humble origin and little education and coarse of manners and speech, who had emigrated from Ireland when quite young, and who seems, from the evidence, to have been from about the time of her arrival in this country, indifferent, if not even hostile, in feeling towards nearly all her blood relatives on account of the treatment she received from them when she came to the United States. There was, however, one exception, her brother, Stephen Lovejoy, who predeceased her in 1893, and from whom she inherited the bulk, if not all, of her large fortune. Subsequent to his death, and on February 14, 1895, she executed a will which is in evidence herein and is substantially like that now presented for probate, except as to the residuary legatees and devisees, who are, however, in both wills charitable and religious corporations. The will now under consideration was executed April 25, 1896, and a codicil thereto on the day of her death, March 10, 1897. Legacies are given by the will to several Roman Catholic priests and to a number of relatives, friends and servants, and the residue of the estate is given to the executors in trust to convert into money and apply the same (including proceeds of real estate) to the payment of the legacies above referred to, as well as many others subsequently specified, principally to Catholic charitable and religious societies. The residue is to go, one-third each, to St. Joseph's Seminary and the Church of All Saints, and one-ninth each to the Roman Catholic Orphan Asylum, the Roman Catholic Protectory, and the Mission of the Immaculate Virgin. The Rev. James W. Power and Peter Condon were named as executors. The codicil makes several unimportant changes in the will, confirms a deed of real estate before given to Father Power, and then provides for the substitution of Daniel J. Quinlan in the place of Peter Condon as executor. The probate of the will and codicil was contested by sundry of his heirs-at-law and next of kin of the deceased upon the usual grounds, and the codicil alone by Peter Condon, the executor who was

superseded by its provisions.  Having carefully considered the voluminous evidence and the able briefs of the various counsel, I do not deem it necessary to make any analysis of the testimony, but merely to give my conclusions upon the points at issue.  I find that the testatrix had full testamentary capacity at the time that the will in question was made, and that said will was duly executed in conformity to law.  I further find that it was not executed under any undue influence.  Bearing clearly in mind the principles laid down in Marx v. McGlynn, 88 N. Y. 357, and other cases to similar effect, I can still find no satisfactory evidence of the abuse by Father Power, or any one else, of any confidential relations.  The mere fact, moreover, that the testatrix was not considered a very devout or religious woman, that she sometimes indulged in profane and irreligious language, does not convince me that her charitable and religious bequests were made under any undue influence. It is a well known fact that many people, and especially those in the same class in life to which the testatrix by origin, education and condition, belonged, even though they may not themselves live up strictly to the teachings of their religion, are, nevertheless, strongly influenced in life, and in any testamentary disposition that they may make, by their traditional or sentimental associations with the church in which they have been brought up, and especially in cases of testamentary disposition where there are none of their own kith and kin in whom they are especially interested, which was certainly the fact in the case now under consideration.  In connection with the codicil a question arises with regard to certain testimony of Father Power received under objection and exception of contestants other than the contestant Condon, and as to which decision, upon a motion to strike out, was reserved by Surrogate Arnold.  I have disregarded this testimony, and I grant the motion of Mr. McClure as set forth in detail in the memorandum submitted by him to strike out the same, upon the grounds

therein contained. I am, however, of opinion that if this testimony had been allowed to stand it would have tended to sustain rather than overthrow the codicil. I find also as to the codicil that it was not executed under any undue influence. The testimony reveals reasons quite sufficient, in my judgment, for the change made by the testatrix in one of her executors. The question as to testamentary capacity is more serious in this case than in that of the will, as the codicil was executed on the day of Mrs. Johnson's death. Learned experts on each side give diametrically opposite opinions as usual as to the probability of her testamentary capacity in view of her bodily ailments. I am of opinion, after most careful consideration of their views and of the other testimony as to the conversations and actions of the testatrix on that day, that she was quite in possession of all of her faculties, and understood perfectly and was quite competent to understand the action that she was taking. The will and codicil will, therefore, be admitted to probate.

Probate granted.